No. 23-12323-CC

# In the United States Court of Appeals for the Eleventh Circuit

UNITED STATES OF AMERICA,
*Appellee*

v.

NARADA BARRY WHITE,
*Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
D.C. NO. 22-CR-00173-KD-MU (HON. KRISTI K. DUBOSE)

BRIEF OF APPELLEE UNITED STATES

SEAN P. COSTELLO
    United States Attorney
    Southern District of Alabama

SCOTT A. GRAY
    Assistant United States Attorney
    Southern District of Alabama
    63 South Royal Street, Suite 600
    Mobile, Alabama 36602
    (251) 441-5845

## <u>CERTIFICATE OF INTERESTED PERSONS</u>
## <u>AND CORPORATE DISCLOSURE STATEMENT</u>

*United States v. Narada Barry White,* No. 23-12323-CC

Pursuant to 11th Cir. R. 26.1-1, the United States adopts Narada Barry White's

Certificate of Interested Persons, adding the following party:

Gray, Scott A. – Assistant United States Attorney

## STATEMENT REGARDING ORAL ARGUMENT

The United States respectfully submits that this Court may decide this appeal without oral argument.  In this appeal, Narada Barry White contends that the district court imposed an unreasonable sentence because it relied on clearly erroneous facts at sentencing.  This Court may apply settled legal precedent to analyze the district court's findings of fact at sentencing, and the record from the district court is straightforward.  Accordingly, this Court may resolve this appeal upon a review of the parties' briefs and the record.

# **TABLE OF CONTENTS**

Page

CERTIFICATE OF INTERESTED PERSONS ..........................................................C1

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

TABLE OF CONTENTS ...................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................ iv

STATEMENT OF JURISDICTION ........................................................................... vii

STATEMENT OF THE ISSUE ..................................................................................... 1

STATEMENT OF THE CASE ....................................................................................... 2

    A. Course of Proceedings......................................................................... 2

    B. Disposition Below.................................................................................. 8

    C. Statement of Facts ............................................................................... 8

    D. Standards of Review .......................................................................... 11

SUMMARY OF ARGUMENT .................................................................................... 12

ARGUMENT AND CITATIONS OF AUTHORITY ................................................ 13

    White is Violent, and his 96-Month Sentence is Reasonable.................................. 13

    A. The District Court Selected a Procedurally Reasonable Sentence .................. 14

        1. The District Court Properly Found that White Robbed a Package
           Store in 2022 ...................................................................................... 17

        2. The District Court Correctly Concluded that White Shot
           Two Men in 2019 ............................................................................. 25

ii

      a.  The District Court Considered Reliable Evidence.................. 25

      b.  This Conclusion did not Affect the Sentence ......................... 30

   B.  White's Violent Recidivism Warranted a 96-Month Sentence ........................ 33

CONCLUSION ...................................................................................... 37

CERTIFICATE OF COMPLIANCE .............................................................. 38

CERTIFICATE OF SERVICE ...................................................................... 38

# <u>TABLE OF AUTHORITIES</u>

**U.S. Supreme Court Cases**

*Gall v. United States*, 552 U.S. 38 (2007) ........................................................... 13, 14, 31, 33

**Court of Appeals Cases**

*United States v. Alicea*, 875 F.3d 606 (11th Cir. 2017) ....................................................... 15

*United States v. Baptiste*, 935 F.3d 1304 (11th Cir. 2019) ........................................17, 27, 28

*United States v. Curtin*, 78 F.4th 1299 (11th Cir. 2023) ................................................. 31, 32

\* *United States v. Daniels*, 97 F.4th 800 (11th Cir. 2024) .......................19, 20, 24, 26, 27, 28

*United States v. Diaz*, 248 F.3d 1065 (11th Cir. 2001) ........................................................ 27

*United States v. Ghertler*, 605 F.3d 1256 (11th Cir. 2010) ............................................. 29, 30

*United States v. Hall*, 965 F.3d 1281 (11th Cir. 2020) ........................................................ 34

*United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010) ................................................... 14, 33

*United States v. Keene*, 470 F.3d 1347 (11th Cir. 2006) ..................................................... 32

*United States v. Melgen*, 967 F.3d 1250 (11th Cir. 2020) ................................................... 11

*United States v. Osorio-Moreno*, 814 F.3d 1282 (11th Cir. 2016) ..................... 34, 35, 36, 37

*United States v. Oudomsine*, 57 F.4th 1262 (11th Cir. 2023) .............................................. 33

*United States v. Overstreet*, 713 F.3d 627 (11th Cir. 2013) ................................................ 37

*United States v. Owens*, 96 F.4th 1316 (11th Cir. 2024) ..........................................15, 28, 31

*United States v. Philidor*, 717 F.3d 883 (11th Cir. 2013) ................................................... 16

*United States v. Pierce*, 136 F.3d 770 (11th Cir. 1998) ....................................... 18, 20, 21, 22

*United States v. Plasencia*, 886 F.3d 1336 (11th Cir. 2018) ................................................. 15

\* *United States v. Riley*, 995 F.3d 1272 (11th Cir. 2021) ................................................34, 36

*United States v. Rogers*, 989 F.3d 1255 (11th Cir. 2021) ........................................16, 17, 27

*United States v. Sanchez*, 789 F.3d 827 (8th Cir. 2015) ................................................. 19, 23

*United States v. Shaw*, 560 F.3d 1230 (11th Cir. 2009) ............................................... 33

*United States v. Stancil*, 4 F.4th 1193 (11th Cir. 2021) ........................16, 21, 22, 23, 24, 30

*United States v. Stapleton*, 39 F.4th 1320 (11th Cir. 2022) ................................................... 11

*United States v. Taylor*, 997 F.3d 1348 (11th Cir. 2021) ................................................... 36

*United States v. Ware*, 69 F.4th 830 (11th Cir. 2023) ................................................18, 19, 23

*United States v. Watkins*, 10 F.4th 1179 (11th Cir. 2021) ................................ 16, 21, 22, 30

*United States v. Wise*, 881 F.2d 970 (11th Cir. 1989) ............................................... 16

**Statutes**

18 U.S.C. § 922(g)(1) ................................................................................. 2, 13

18 U.S.C. § 3231 .................................................................................................. vii

18 U.S.C. § 3553(a) ............................................................................................. 33

18 U.S.C. § 3553(a)(2)(B) ................................................................................... 36

18 U.S.C. § 3553(a)(2)(C) ................................................................................... 36

18 U.S.C. § 3661 ....................................................................... 16, 22, 23, 28

18 U.S.C. § 3742(a) ............................................................................................. vii

28 U.S.C. § 1291 ................................................................................................... vii

**Other Authorities**

11th Cir. R. 26.1-1 ................................................................................................. 1

Fed. R. App. P. 32(a)(7)(B)(i) ............................................................................. 38

Fed. R. Evid. 602 .................................................................................................. 29

Fed. R. Evid. 701 .................................................................................................. 18

Fed. R. Evid. 801(d)(1)(C) .............................................................................22, 27

Fed. R. Evid. 1101(d)(3) ...................................................................................... 16

U.S.S.G. § 4A1.2(e) .............................................................................................. 34

U.S.S.G. § 6A1.3(a) .........................................................................................17, 21

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231 to preside over this federal prosecution.  This Court has jurisdiction to review Narada Barry White's sentence pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUE</u>

Whether the district court correctly found that Narada Barry White engaged in further unlawful conduct that warranted a higher sentence.

## STATEMENT OF THE CASE

As officers in Selma, Alabama, responded to a report of gunfire in May 2020, they found Narada Barry White ("White") in a vehicle with a gun in the glove box and shell casings in the floorboard. [Doc. 78, 4–5, 11–14]. White's criminal record included felony convictions for robbery, assault, and obstruction of justice. [Doc. 52, 5–7]. He pleaded guilty to unlawful possession of a firearm on that occasion. [Doc. 80, 22]. At White's sentencing hearing, an officer implicated White in the shooting of two men in 2019 and the robbery of a package store in 2022. [Doc. 59, 12–15]. The district court continued the hearing, heard additional testimony from the officer, and concluded that the officer provided credible testimony. [Doc. 79, 38]. It found by a preponderance of the evidence that White committed the assaults and the robbery. [*Id.* at 38–39]. The district court deviated above White's advisory range under the United States Sentencing Guidelines (the "Guidelines") and sentenced White to serve 96 months in prison. [*Id.* at 39–40]. In this appeal, White challenges the district court's decision to deviate upward from the Guidelines range. [11th Cir. Doc. 20, 20–28]. Citations to the district court and appellate records reflect the pagination on the respective electronic dockets ("[Doc. #, #]" and "[11th Cir. Doc. #, #]").

### A.    Course of Proceedings

A federal grand jury in the Southern District of Alabama returned an indictment that charged White with a violation of 18 U.S.C. § 922(g)(1). [Doc. 1, 1]. The charge

stemmed from White's alleged unlawful possession of a firearm in May 2020. [*Id.*]. The indictment indicated that White had prior felony convictions for robbery, assault, and obstruction of justice by use of a false identity. [*Id.*].

White submitted two motions to dismiss his indictment. [Doc. 17; Doc. 28]. His first motion asserted that § 922(g)(1) violates the Second Amendment. [Doc. 17, 14]. In his second motion, White sought to suppress evidence that officers found during the traffic stop that led to White's arrest and claimed that the district court should dismiss the indictment because all the evidence derived from that stop. [Doc. 28, 1]. The United States opposed both motions. [Doc. 24; Doc. 30].

The district court denied White's Second Amendment motion on the parties' briefs. [Doc. 25]. It held a hearing on White's motion to suppress the evidence from the traffic stop. [Doc. 78].

At that suppression hearing, the United States presented testimony on the traffic stop from three officers. [*Id.* at 2]. In short, the officers testified that they received a report of gunshots late one night in May 2020 and that subjects near the scene of that report described an orange Jeep as the source of the gunfire. [*Id.* at 5–7, 11, 43–44]. An officer recounted that he saw an orange Jeep during the investigation and—along with other officers—initiated a traffic stop. [*Id.* at 10–11, 35–36]. Lieutenant Ray Blanks ("Blanks") of the Selma Police Department participated in the stop and recalled that he recognized White. [*Id.* at 59–60]. Blanks testified that he knew that White had

3

outstanding warrants. [*Id.* at 59]. The officers arrested White, searched the vehicle, and found a gun in the glove box along with shell casings in the floorboard. [*Id.* at 12–14]. The district court credited the officers' testimony and concluded that they had a valid basis to stop the Jeep, arrest White, and search the Jeep. [*Id.* at 70].

After the district court denied White's motion to suppress, White informed the district court that he intended to plead guilty without a written plea agreement. [Doc. 37, 1]. He consented to have a magistrate judge conduct the plea colloquy. [Doc. 41, 1; Doc. 80, 4–5]. The magistrate judge read a factual summary of White's conduct. [Doc. 80, 16–18]. In addition, the prosecutor noted that White had additional felony convictions and indicated that the United States might present additional information on White's conduct at sentencing. [*Id.* at 18–22]. White pleaded guilty to the offense, and the magistrate judge found that White pleaded guilty knowingly and voluntarily. [*Id.* at 22–23].

The magistrate judge entered a report and recommendation in accord with that determination. [Doc. 44, 1]. Neither party objected, and the district court entered an order that accepted White's guilty plea. [Doc. 45, 1].

A probation officer prepared a presentence investigation report (the "PSI") in White's case. [Doc. 52]. The probation officer concluded that the Guidelines recommended a sentence of 37 to 46 months in prison. [*Id.* at 12]. As part of the probation officer's analysis, the PSI included a description of White's criminal

convictions and noted other pending criminal charges. [*Id.* at 5–9]. White's convictions included two robbery convictions, an assault conviction, a conviction for obstruction of justice by use of false identification, and various convictions for the negotiation of worthless instruments. [*Id.* at 5–8]. Under the Guidelines, White received eight criminal history points, which placed him in a criminal history category of IV out of VI. [*Id.* at 8]. The PSI cited numerous pending charges, too. [*Id.* at 8–9]. Pertinent to this appeal, paragraph 40 referenced two pending assault charges based on an incident in August 2019 along with two firearm charges, and paragraph 42 referenced a 2022 robbery charge. [*Id.* at 9].

Neither party objected to the probation officer's Guidelines calculations. [Doc. 59, 3]. Thus, the district court adopted those determinations but remarked that the calculations yielded "a surprisingly very low" Guidelines range. [*Id.*]. As the parties presented recommendations for White's sentence, the district court noted that it would consider the evidence from the suppression hearing as to the circumstances that surrounded White's unlawful possession of the firearm. [*Id.* at 7–8].

The United States also presented testimony from Blanks on one of White's robbery convictions along with the pending assault and robbery charges. [*Id.* at 9–15]. Blanks testified that he investigated a 2014 robbery in which White and a relative "rushed the cashier" so that the relative could steal money. [*Id.* at 11]. Subsequently, Blanks stated that he investigated a 2019 shooting that pointed to White as the

5

individual who shot two men during an altercation at an apartment complex. [*Id.* at 12–14]. In addition, Blanks recounted another investigation in which he sought an arrest warrant for White in connection with the robbery of a package store in 2022. [*Id.* at 14–15]. Blanks collected video from the 2019 and 2022 incidents. [*Id.*]. He testified initially that he could not identify White in the video of the 2019 assaults but recognized his face in the video of the 2022 robbery. [*Id.*]. Blanks indicated that two witnesses identified White as the shooter in the 2019 assaults. [*Id.* at 13].

The district court elected to continue the hearing because it intended to consider "an upward departure" from White's Guidelines range. [*Id.* at 16]. White also sought disclosure of the evidence from the assault and robbery investigations. [*Id.*].

When the hearing reconvened, White confirmed that he had received discovery on those incidents. [Doc. 79, 2]. Blanks returned to the stand and provided additional testimony on those investigations. [*Id.* at 3–28]. On this occasion, Blanks indicated that he was able to identify White in the video footage from the 2019 assaults. [*Id.* at 5–6, 14–15]. He testified that he reviewed the video again and recognized White's walk and body build based on his many encounters with White. [*Id.* at 15]. Blanks identified photo arrays presented to two witnesses of the shootings and noted that each witness identified White. [Doc. 64, 1, 8–9; Doc. 79, 9–10].

Likewise, Blanks explained that he recognized White in the video from the 2022 package store robbery because he had "put him in jail too many times." [Doc. 79, 11].

According to Blanks, the clerk made a statement that the robber threatened her but identified the robber only as a Black male.  [*Id.* at 23, 25].

After Blanks testified, the parties presented arguments.  [*Id.* at 29–35].  White—through counsel—urged the district court to discount the witness identifications from the 2019 shooting because he had no opportunity to question the witnesses.  [*Id.* at 31–32].  Nonetheless, White acknowledged that "hearsay is admissible" at sentencing.  [*Id.* at 31].  White apologized to the district court for his actions.  [*Id.* at 35–37].

As the district court pronounced White's sentence, it found based on the testimony at the suppression hearing that White fired randomly at an apartment complex from the orange Jeep.  [*Id.* at 37–38].  It concluded that this conduct "would justify an upward departure alone" in the face of White's prior robbery and assault convictions.  [*Id.* at 38].  The district court also found by a preponderance of the evidence that White committed the 2019 assaults and the 2022 package store robbery.  [*Id.*].  It found Blanks to be credible.  [*Id.*].  On the package store robbery, the district court had "no doubt" that Blanks could identify White.  [*Id.*].  The district court was less certain of Blanks's identification from the assault video but explained that it would deviate above the Guidelines range regardless.  [*Id.* at 38–39].

The district court observed that White "more than earned the [ten] years" that White's statute of conviction provided.  [*Id.* at 39].  It ultimately selected a 96-month sentence, though, to account for White's plea.  [*Id.*].  As part of the pronouncement,

the district court concluded that White's criminal history was "more violent and serious" than a typical offender in category IV and noted that White "continued to commit violent acts before and even after this offense" such that the sentence was appropriate to deter White and to protect the public.  [*Id.* at 40].  White objected unsuccessfully to the procedural and substantive reasonableness of the sentence.  [*Id.*].

After these proceedings concluded, the district court entered a final judgment in White's case.  [Doc. 65].  It also entered a statement of reasons that described the sentence as a variance from the Guidelines range.  [Doc. 66, 2].  White submitted a notice of appeal from that judgment to this Court.  [Doc. 67].  This appeal followed.

### B.     Disposition Below

The district court deviated above White's Guidelines range and imposed a prison sentence of 96 months.  [Doc. 79, 39].  Along the way, the district court found  by  a preponderance of the evidence that White shot two people in 2019 and robbed a package store in 2022 based on testimony from Blanks, who investigated those offenses.  [Doc. 79, 38–39].  In this appeal, White challenges the district court's factual conclusions and contends that those allegedly erroneous determinations render his sentence unreasonable.  [11th Cir. Doc. 20, 20–28].

### C.     Statement of Facts

Blanks has worked for the Selma Police Department for over two decades.  [Doc. 78, 58].  Over that career, Blanks put White "in jail multiple times on multiple charges."

[Doc. 79, 15]. Through those encounters with White, Blanks became familiar with White's body build, walk, and face. [*Id.* at 11, 15].

White entered a Dollar General store with a cousin in May 2014 with the intent to steal beer. [Doc. 59, 11]. Once inside the store, the two men watched the cashier. [*Id.*]. When the cashier opened the cash drawer, White and the cousin "rushed the cashier." [*Id.*]. The cousin stole money, and both men then fled. [*Id.*]. Officers arrested White and his cousin down the street. [*Id.*]. Blanks was involved in the investigation and noted that White's cousin implicated White in the robbery. [*Id.*]. White ultimately pleaded guilty to a state robbery charge. [Doc. 52, 7].

Subsequently, White became engaged in an altercation with a woman at an apartment complex in August 2019. [Doc. 59, 12]. Another man "came over to try to intervene to prevent them from arguing." [*Id.*]. Things escalated. [Doc. 79, 4]. Various witnesses stood nearby, and more people came out over time to see the commotion. [*Id.* at 5–6]. Eventually, White retrieved a gun from the black Honda Accord that he drove at that time. [*Id.* at 4]. He shot the man in the ankle and got into his vehicle. [*Id.*]. Before White left, he exited again and fired at another man. [*Id.*]. The second man fell to the ground and left a trail of blood behind him. [*Id.* at 6–7].

Blanks became involved in this investigation, too. [*Id.* at 3]. Officers collected shell casings from the scene, and an evidence technician procured video footage from the apartment complex. [Doc. 59, 14]. Blanks obtained photographs from the scene.

[Doc. 79, 7].  He also interviewed two witnesses to the shooting and recorded those interviews.  [*Id.* at 8].  Blanks showed the witnesses photo arrays, and both witnesses identified White as the shooter.  [*Id.* at 9–10].  Initially, Blanks could not identify White in the video of the assaults but subsequently indicated that he could recognize White based on his walk and body build.  [Doc. 59, 14; Doc. 79, 5–6, 14–15].  Alabama authorities charged White with two assaults.  [Doc. 52, 9].

The next year, officers with the Selma Police Department received a report late one night in May 2020 that someone had fired shots into a residence.  [Doc. 78, 4–5].  When officers responded, they saw several people outside who indicated that a person in an orange Jeep "came through shooting."  [*Id.* at 5].  While the officers responded, they heard more sounds of gunfire.  [*Id.* at 6, 43–44].  Subsequently, an officer saw an orange Jeep and initiated a traffic stop.  [*Id.* at 10].

Blanks also was on duty that evening.  [*Id.* at 59–60].  He heard dispatch exchanges about the orange Jeep and pulled behind the other officers to assist with the stop.  [*Id.* at 60].  Blanks approached the vehicle and identified White as the driver.  [*Id.*].  He arrested White because he had outstanding warrants.  [*Id.* at 60–61].  White ultimately pleaded guilty to the violation of § 922(g)(1) at issue in this case as a result of that traffic stop.  [Doc. 80, 17–18, 22].

Almost two years later, White entered a package store in March 2022 and made a purchase.  [Doc. 79, 10].  The cashier expected White to leave, and she returned to

the counter. [*Id.*]. She turned her back, heard a noise from the cash register, and turned around to see White placing money into his pocket. [*Id.*]. When the cashier asked White to return the money, White threatened to shoot her. [*Id.* at 23].

Once again, Blanks investigated this crime. [*Id.* at 10]. He obtained video of the exterior of the package store. [*Id.* at 11]. Blanks also reviewed video from the interior of the package store, but technicians were unable to preserve it. [*Id.* at 11, 21–22]. As Blanks reviewed the video, he identified White as the person who exited a vehicle because Blanks had "put him in jail too many times." [*Id.* at 11]. White faced a state robbery charge for this offense that had been waived to a grand jury several months before his sentencing for his federal offense. [Doc. 52, 9].

### D.    Standards of Review

This Court reviews a sentence for an abuse of discretion. *United States v. Melgen*, 967 F.3d 1250, 1264 (11th Cir. 2020). That review entails consideration of both procedural and substantive reasonableness. *Id.* Under that inquiry, this Court evaluates a district court's conclusions of fact for clear error and gives particular deference to determinations of credibility. *United States v. Stapleton*, 39 F.4th 1320, 1333 n.12 (11th Cir. 2022).

11

## SUMMARY OF ARGUMENT

The district court found that White committed a 2019 shooting and a 2022 package store robbery for which he had not yet been convicted.  The district court relied on Blanks's testimony about those investigations to draw those conclusions.  It then imposed a sentence above White's Guidelines range.  The sentence is reasonable.

White's sentence is procedurally reasonable.  Blanks squarely implicated White in both the package store robbery and the shooting.  He consistently identified White in video footage from the package store.  Although he initially did not point to White in the video footage of the shooting, Blanks ultimately recognized White.  A lay witness may offer identification testimony based on experience at trial and certainly may do so at sentencing.  Blanks testified to a decade of pursuits against White over at least four investigations.  In addition to the two incidents at issue, Blanks investigated another robbery that yielded a state conviction and an additional shooting investigation that culminated in White's federal conviction.  Blanks's identification was reliable.  As for the 2019 shooting, Blanks noted that two witnesses identified White from photo arrays.  Those identifications were sound, too.  The district court indicated further that it would have imposed the same sentence without the shooting evidence.

The sentence also is substantively reasonable.  White had a long and serious criminal history.  The district court selected a sentence that accounted for that conduct yet also fell well below the statutory maximum.  This Court should affirm the sentence.

## ARGUMENT AND CITATIONS OF AUTHORITY

### White is Violent, and his 96-Month Sentence is Reasonable.

The district court reasonably sentenced White to serve 96 months in prison to account for White's proclivity for violence.  Officers investigated a report of gunfire and found White inside an orange jeep with a gun in the glove box and casings in the floorboard.  White pleaded guilty to a violation of 18 U.S.C. § 922(g)(1) because he was a convicted felon several times over when he possessed the gun.  His criminal record included two prior convictions for robbery and a conviction for assault.  As the district court noted, the circumstances of White's offense coupled with his criminal history warranted a sentence above his Guidelines range.  The district court also found by a preponderance of the evidence that White shot two men in 2019 and robbed a package store in 2022.  Ultimately, the district court concluded that White "more than earned" the statutory maximum of ten years for his offense but imposed a 96-month sentence because White pleaded guilty.  [Doc. 79, 39].  This Court should affirm White's sentence.

A district court should impose a sentence that is both procedurally and substantively sound. *Gall v. United States*, 552 U.S. 38, 51 (2007).  Among other grounds, a sentence may be procedurally unreasonable if a district court relies on clearly erroneous facts to select a sentence. *Id.*  At the substantive level, a sentence should be appropriate in the light of the totality of the circumstances. *Id.*  A sentence may be

13

substantively unreasonable if the district court failed to consider a relevant sentencing factor, weighed an improper or irrelevant criterion, or otherwise clearly erred in its judgment. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*). This Court reviews the sentence for an abuse of discretion. *Gall*, 552 U.S. at 51.

In this appeal, White challenges the procedural and substantive reasonableness of his sentence. [11th Cir. Doc. 20, 20–28]. Both points rely in significant part on White's claim that the district court erroneously found that he committed the 2019 shooting and 2022 package store robbery.

This Court should affirm White's sentence. The sentence is procedurally reasonable because the district court appropriately credited Blanks's testimony and found based on that evidence that White committed both the shooting and the package store robbery. In addition, the district court's pronouncement makes it clear that it would have deviated from the Guidelines range regardless and that it would have imposed the same sentence even if it ignored the shooting evidence. White's sentence is substantively reasonable due to both his violent criminal convictions and Blanks's testimony that White engaged in additional violent conduct. This brief examines the procedural and substantive reasonableness of White's sentence in turn.

## A.    The District Court Selected a Procedurally Reasonable Sentence.

White's sentence is procedurally reasonable. Blanks testified that he investigated a 2019 shooting and a 2022 package store robbery. He pointed to White as the culprit

behind both crimes. Two witnesses picked White from photo arrays as the shooter at an apartment complex. Blanks also reviewed video footage of the shooting incident and ultimately identified White, though he did not make that identification initially at White's sentencing hearing. As for the package store robbery, Blanks watched video footage and promptly identified White as the robber based on Blanks's longtime efforts to bring White's criminal exploits to an end. The district court found that Blanks provided credible testimony and concluded by a preponderance of the evidence that White committed both offenses. It also made clear that it would have made the same deviation from White's Guidelines range even if it excluded from consideration the 2019 shooting in which Blanks's identification was less strong. This Court should affirm the procedural reasonableness of White's sentence.

A procedural error occurs "if the factual findings [that the district court] uses in a sentencing enhancement are clearly erroneous." *United States v. Owens*, 96 F.4th 1316, 1320 (11th Cir. 2024). A district court clearly errs if this Court's review of the evidence leaves it "with the definite and firm conviction" that the district court made a mistake. *United States v. Alicea*, 875 F.3d 606, 608 (11th Cir. 2017) (internal quotation marks omitted). As this Court undertakes that analysis, it gives great deference to the district court's assessment of credibility. *United States v. Plasencia*, 886 F.3d 1336, 1343 (11th Cir. 2018). This Court typically sets aside a district court's credibility determination only if the testimony contradicts the laws of nature or is so improbable that no reasonable

person could believe it. *United States v. Stancil*, 4 F.4th 1193, 1199 (11th Cir. 2021).

As this framework suggests, the district court serves as the trier of fact at sentencing. *United States v. Wise*, 881 F.2d 970, 971 (11th Cir. 1989) (explaining that a district court "must establish the facts and circumstances of the defendant's offense conduct" at sentencing and does so "by means of an adversarial fact-finding process, similar to a civil bench trial"). Ultimately, it must find that a preponderance of the evidence supports a fact to rely upon it. *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013). The preponderance standard "is one of widespread and longstanding use" that refers to "evidence which is more convincing than the evidence offered in opposition to it." *United States v. Watkins*, 10 F.4th 1179, 1184 (11th Cir. 2021) (*en banc*) (internal quotation marks omitted). Evidence preponderates if it "persuades the trier of fact that a proposition is more likely true than not true." *Id.* at 1185 (internal quotation marks omitted).

Evidence often is admissible at sentencing even if it would not pass muster in a criminal trial. Congress has provided that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. In that vein, the Federal Rules of Evidence do not apply to sentencing proceedings. Fed. R. Evid. 1101(d)(3); *see also United States v. Rogers*, 989 F.3d 1255, 1260 n.8 (11th Cir. 2021) (noting

that "the Federal Rules of Evidence do not apply in sentencing proceedings"). Likewise, the Guidelines advise in a policy statement that a district court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). For example, the district court may consider hearsay evidence if it sufficiently is reliable. *United States v. Baptiste*, 935 F.3d 1304, 1315 (11th Cir. 2019).

When this Court applies these principles to White's case, it should affirm White's sentence. It should begin with the evidence on the package store robbery, and it then should proceed to examine the record as to the shooting.

### 1. The District Court Properly Found that White Robbed a Package Store in 2022.

As an initial matter, this Court soundly should reject White's factual challenge to his commission of the package store robbery in 2022. Blanks identified White as the robber from video footage. During his law enforcement career, Blanks investigated White for numerous crimes. Thus, he was familiar with White's appearance. The district court properly found that White robbed the package store based on that testimony.

The district court reasonably credited Blanks's identification testimony. Although the standards at sentencing are less stringent than at trial, this Court may look to its treatment of similar identification evidence in trials to approve of the district

17

court's factual finding that White robbed the package store. At trial, a lay witness may offer an opinion if the witness bases the opinion on his or her own perception, the opinion is helpful to resolve a fact at issue, and it is not based on any specialized knowledge that would render the lay witness an expert. Fed. R. Evid. 701.

This Court has applied these principles to an individual's ability to identify a person on video or photographic data based on prior observations. *United States v. Pierce*, 136 F.3d 770, 773–75 (11th Cir. 1998). In *Pierce*, the United States called two witnesses—a probation officer and workplace supervisor—who identified the defendant in a surveillance photograph based on their familiarity with the defendant. *Id.* at 773. The *Pierce* Court allowed such identification testimony when a witness is more likely to be able to identify a defendant than is the jury. *Id.* at 774. This Court pointed to numerous factors but stressed the "level of familiarity with the defendant's appearance" as the "most critical" factor when a district court considers whether a witness is qualified to testify. *Id.* It concluded that the witnesses in *Pierce* sufficiently were familiar with the defendant because they had "repeated contacts with [the defendant] over significant periods of time." *Id.* at 775.

Over time, this Court has endeavored to "fill in the gaps left by the *Pierce* standard." *United States v. Ware*, 69 F.4th 830, 849 (11th Cir. 2023). The *Ware* Court outlined a continuum of identification testimony. *Id.* A witness with "such an intimate relationship with the defendant that there is no doubt the witness brings a level of

18

familiarity to the identification that a jury could never hope to attain" readily provides an admissible identification. *Id.* Conversely, an identification is inadmissible if the witness merely relied on the same photographic depictions and witness descriptions that a fact finder should be able to consider in the first instance. *Id.* As the Court evaluated admissible evidence within those two extremes, it analyzed decisions from other circuits and cited an Eighth Circuit decision that admitted agent identification testimony. *Id.* at 850 (citing *United States v. Sanchez*, 789 F.3d 827, 831, 837 (8th Cir. 2015)). *Sanchez* approved of a district court's conclusion that an agent's identification testimony was helpful to a jury due to "the relatively low quality of the footage and the agent's extensive surveillance" of the defendant. 789 F.3d at 837. Ultimately, this Court in *Ware* also affirmed the identification testimony of two agents who pointed to the defendant in photographs and video based on their contact with the defendant over several hours after his arrest. 69 F.4th at 850–51.

After *Ware*, this Court again approved of the admission of identification testimony by a detective who knew a defendant from his years of community involvement. *United States v. Daniels*, 97 F.4th 800, 811–12 (11th Cir. 2024). In addition to the deputy's community involvement with the defendant, this Court referred with approval to the detective's conduct. *Id.* Namely, the detective relied on his familiarity with the defendant to find him and obtain an updated photograph for a photo array. *Id.*

In White's case, Blanks provided reliable identification testimony. Blanks described his intrepid pursuit of White for reiterant felony offenses. Neatly enumerated, Blanks testified to at least four felony investigations into White in which he participated, namely: (1) the 2014 Dollar General robbery to which White ultimately pleaded guilty in state court; (2) the 2019 shooting and assaults at an apartment complex; (3) the 2020 shooting report that led to White's traffic stop and ultimately to his guilty plea in the district court for the violation of § 922(g)(1); and (4) the 2022 package store robbery. Blanks discussed the 2020 traffic stop at the suppression hearing and testified on the other incidents across White's two sentencing hearings. These considerable contacts compare to the probation officer's regular visits that this Court credited in *Pierce* and the years of community involvement that this Court emphasized in *Daniels*. *Daniels*, 97 F.4th at 811–12; *Pierce*, 136 F.3d at 773, 775. Blanks testified that he was familiar with White's appearance and facial features. *Pierce*, 136 F.3d at 775.

Blanks's conduct also underscored his familiarity with White. Blanks identified White correctly during the 2020 traffic stop that led to White's guilty plea in this case. *See Daniels*, 97 F.4th at 812 (noting that an officer was able to identify a defendant and obtain an updated photograph for a photo array). At trial, Blanks's identification of White would have been admissible.

Given the clear admissibility of the identification testimony at trial, it follows that the district court properly relied on this evidence at sentencing. Applied to the

sentencing context, identification testimony that satisfies the *Pierce* standard readily passes the lower reliability bar that exists at sentencing. The district court described the evidence in these terms. As the district court credited Blanks's testimony, the district court noted that Blanks had dealt with White "since at least 2014 when he investigated the Dollar General robbery" in which White participated. [Doc. 79, 38]. It contrasted Blanks's familiarity with White to the court's lack of contacts with White. Notably, Blanks identified White successfully during the 2020 traffic stop. At bottom, Blanks's testimony satisfied *Pierce* because Blanks "had become familiar with [White's] appearance and, in particular, his facial features through repeated contacts with [White] over significant periods of time." 136 F.3d at 775. Accordingly, the identification testimony had "sufficient indicia of reliability to support its probable accuracy" at sentencing. U.S.S.G. § 6A1.3(a). The district court reasonably considered the identification at sentencing.

In that vein, the district court's finding established that White committed the package store robbery by a preponderance of the evidence. Blanks's identification of White from the video footage was "more convincing than the evidence offered in opposition to it." *Watkins*, 10 F.4th at 1184 (internal quotation marks omitted). Although White attempted to poke holes in Blanks's testimony, he did not offer a compelling counternarrative of the offense. The district court made a valid credibility determination when it rejected White's efforts to discredit the identification. *Stancil*, 4

F.4th at 1199.  The strong identification testimony from the surveillance footage made it more likely than not that White robbed the package store.  *See Watkins*, 10 F.4th at 1185 (noting the standard).  Hence, the district court found that White robbed the package store by a preponderance of the evidence based on specific and reliable information.

Painting with a broad brush, White discounts what he describes as the district court's reliance on "hearsay testimony" from Blanks.  [11th Cir. Doc. 20, 22].  As an initial matter, Blanks's identification of White from surveillance footage was not hearsay testimony.  On the package store robbery, Blanks offered a lay opinion as to White's identity from the video footage based on his familiarity with White.  As discussed above, the identification testimony readily satisfied this Court's framework for the admission of such evidence.  *See Pierce*, 136 F.3d at 774–75 (allowing the introduction of such evidence when a witness is better able to identify a defendant than the finder of fact).  Blanks's identification of White would have been admissible at trial.  Insofar as Blanks's testimony touched on his reviews of the video prior to his testimony, he testified and was subject to cross examination on his identification procedures.  *See* Fed. R. Evid. 801(d)(1)(C) (providing that a statement is not hearsay if it "identifies a person as someone the declarant perceived earlier" and the declarant testifies on the subject).  The evidence certainly was appropriate for the district court to consider at sentencing.  *See* 18 U.S.C. § 3661 (providing that there are no limits on information that a district court

may consider at sentencing).

Blanks was subject to cross examination on his identifications. White stresses the "fuzzy videos" and the fact that one of the package store videos "was damaged and could not be produced" at White's sentencing hearing. [11th Cir. Doc. 20, 23]. The quality of the footage made Blanks's identification all the more germane. Indeed, the Eighth Circuit noted in *Sanchez* that "the relatively low quality of the footage and the agent's extensive surveillance" made it "clear that the agent was more likely to correctly identify" the defendant from that footage than the jury. 789 F.3d at 837 (internal quotation marks omitted).

Although *Sanchez* is nonbinding, it is persuasive authority. This Court cited it in *Ware* as an example of admissible evidence. 69 F.4th at 850. Likewise, the Eighth Circuit's analysis accords with common sense. An individual with a longstanding relationship with a defendant often will have an enhanced ability to identify that defendant even on footage that may be unclear to a stranger. The district court reasonably noted that difference as it credited Blanks's testimony. This Court should decline to disturb the district court's credibility assessment. *See Stancil*, 4 F.4th at 1199 (finding no clear error even when officers could not recall some details because this Court affords significant latitude to a district court's credibility decisions).

Blanks's initial hesitation to point to White in the shooting video also cuts in favor of his identification testimony as a whole, not against it. It shows that Blanks

looked carefully before he made each identification and testified to White's identity only once he was sure that he could identify him in the video footage. In other words, Blanks's punctilious conduct as a witness counts in favor of his credibility. When Blanks testified that he promptly could recognize White in the video footage from the package store, the district court reasonably could credit that testimony to infer that White committed the robbery. *See id.* (recognizing the deference that this Court affords to credibility determinations).

White contends vaguely that Blanks's testimony "was not enough to support the district court's conclusion" that White committed the additional offenses. [11th Cir. Doc. 20, 22–23]. His argument rests entirely, however, on his contention that Blanks could not identify White from the video footage. The district court reached a reasonable alternative conclusion. Blanks credibly identified White based on his longstanding relationship with him. *See Daniels*, 97 F.4th at 811–12 (citing a detective's "years of community involvement" in which the detective became familiar with the defendant and other associated individuals). Moreover, Blanks demonstrated his familiarity with White when he promptly identified him during the 2020 traffic stop that ultimately led to White's guilty plea to a violation of § 922(g)(1) in the district court. *See id.* at 812 (noting that a detective was able to find the defendant and obtain an updated photograph for a photo array). Once the district court found Blanks to be credible in his identification, that strong identification made it more likely than not that White

24

robbed the package store.

In sum, the district court turned to reliable and specific identification testimony to conclude that White committed the 2022 package store robbery. This Court should affirm the district court's factual conclusion.

### 2. The District Court Correctly Concluded that White Shot Two Men in 2019.

Moving to the shooting incident, this Court should affirm the district court's finding of fact that White assaulted two men when he shot them during an altercation in 2019. Blanks again identified White in footage from the assaults, and two witnesses identified White as the shooter in photo arrays. Although the witnesses did not testify, White did nothing to contest the investigative procedures. The witness identifications through photo arrays provided substantial support for the district court's conclusion that White committed the assaults by a preponderance of the evidence. This Court also may affirm White's sentence on an alternative ground, though, even if it were to find that the district court erred on this point. The district court indicated that it would have reached the same decision even if it placed that evidence to the side, and, accordingly, the assault evidence did not shape White's sentence.

### a. The District Court Considered Reliable Evidence.

Reliable and specific evidence supports the district court's conclusion that White shot two men in 2019. The district court recognized that Blanks's identification was less strong in this instance, but it was backed by two witnesses who identified White as

the shooter and selected him from photo arrays. The district court appropriately credited that evidence and found for sentencing purposes that White committed the shootings.

Blanks's identification of White from video footage once again suffices in this case. Notably, Blanks investigated White on numerous occasions for different offenses and identified White correctly during the 2020 traffic stop that led to his federal conviction. *See Daniels*, 97 F.4th at 811–12 (considering a detective's relationship with the defendant and ability to find the defendant to take an updated photograph). Moreover, Blanks gave a credible account of the identification process. He testified that he studied the video again when the district court continued the sentencing hearing and ultimately picked out White based on his familiarity with him. To be sure, Blanks changed his testimony from the first hearing, and the district court was less certain of Blanks's identification on this occasion. The change, though, did not render Blanks's identification unreliable. Instead, Blanks's statements underscored his diligence in his review of the video footage. His identification testimony was credible and satisfies the preponderance standard.

Moreover, the identification testimony does not stand alone. Two witnesses pointed to White as the shooter and identified him in photo arrays. Blanks testified about the photo arrays and identified the signed arrays from the witnesses at White's sentencing hearing. White did not oppose the district court's consideration of the

photo arrays and did not present any attack on the procedures that yielded the identification. This Court should treat these identifications as sufficiently reliable to merit consideration at sentencing.

As with the lay opinion testimony, this Court also has an established approach to assess the admission of an out-of-court identification of a defendant. Under that test, this Court considers whether "the original identification procedure was unduly suggestive" and then, if it was, this Court considers "whether, under the totality of the circumstances, the identification was nonetheless reliable." *United States v. Diaz*, 248 F.3d 1065, 1102 (11th Cir. 2001). The reliability factors include: "(1) opportunity to view; (2) degree of attention; (3) accuracy of the description; (4) level of certainty; and (5) length of time between the crime and the identification." *Id.* This Court has applied these standards to uphold the admission of an identification from a photo array that included individuals with similar features and complexion. *Daniels*, 97 F.4th at 810.

By extension, an identification from a photo array that meets these criteria should be sufficiently reliable at sentencing even if the person who made the identification does not testify. In the typical trial context, a declarant should testify and be subject to cross examination on a prior identification. Fed. R. Evid. 801(d)(1)(C). The Federal Rules of Evidence do not apply, however, to sentencing proceedings. *Rogers*, 989 F.3d at 1260 n.8. Accordingly, a district court generally may consider hearsay evidence at sentencing if it is sufficiently reliable. *Baptiste*, 935 F.3d at 1315. A district court does not have to

make any express findings on reliability if the reliability of the evidence is clear in the record. *Id.* at 1316. White did not challenge the adequacy of the district court's pronouncement of the sentence in this appeal.

To tie these concepts together, an out-of-court identification that satisfies the *Diaz* standard bears sufficient markers of reliability to merit consideration in a sentencing proceeding even if the witness who identified the defendant does not testify. A sentencing hearing is by its nature less demanding than a criminal trial. This Court recently approved of a district court's consideration of hearsay evidence obtained from a defendant's cell phone at sentencing because it sufficiently was reliable. *Owens*, 96 F.4th at 1323. The same analysis should apply to an individual's identification from a photo array when an officer can testify to the reasonableness of the investigative procedures.

Two witnesses identified White from photo arrays. Blanks identified those arrays at the sentencing proceeding, and they are part of the sentencing record. The photo arrays displayed men of similar skin tones and similar features. *Daniels*, 97 F.4th at 810. Thus, the witness identifications were reliable, and the district court appropriately considered them even if the identifications constituted hearsay. 18 U.S.C. § 3661 (providing that there shall be no limit on the information that a district court may consider at sentencing).

This Court also should consider those identifications along with Blanks's testimony from the video footage. Although the district court indicated more hesitation regarding that identification than with the package store robbery, Blanks's testimony corroborated the photo arrays. *See United States v. Ghertler*, 605 F.3d 1256, 1270 (11th Cir. 2010) (considering corroboration as a pertinent factor in the admission of hearsay evidence). At bottom, the witness identifications from photo arrays and Blanks's identification from video do not stand alone. Instead, they work together and provide sufficient evidence for purposes of sentencing.

Blanks testified and was subject to cross examination on the photo array procedures as well as his identification of White from the video footage. White did not call the photo array procedures into question in the district court, and he has asserted no challenge to them in this appeal. Instead, he quibbles at the edges as he points out that neither witness was a victim of the assaults and questions the motives of one witness because she previously dated White. [11th Cir. Doc. 20, 23]. He also notes the length of time that the charges have been pending. [*Id.*].

This Court should reject these arguments. Even at trial, there is no requirement that a witness be a victim of a crime to provide evidence in connection to that crime. The witness merely must have personal knowledge of the events at issue. Fed. R. Evid. 602. White has not contested that the witnesses had personal knowledge of the shooting. Similarly, White's efforts to impugn the motives of one witness lacks

substantial persuasive force when two witnesses identified White from a photo array. White conceded in the district court that "hearsay is admissible" at sentencing but merely urged the district court to give less weight to such evidence. [Doc. 79, 31]. As the fact finder, the district court had broad latitude to assess the credibility and weight of the evidence. *See Stancil*, 4 F.4th at 1199 (reserving credibility choices to the district court). In addition to the witness identifications, Blanks's identification from the video also corroborated the witness identifications from the photo arrays. *See Ghertler*, 605 F.3d at 1270 (allowing hearsay if it is corroborated). Finally, the alacrity or lack thereof by state prosecutors has no bearing on the strength of the evidence against White as a sentencing matter.

To sum up, the district court properly found that White committed the 2019 shootings by a preponderance of the evidence. The evidence that implicated White in the shooting was far "more convincing than the evidence offered in opposition to" White's involvement. *Watkins*, 10 F.4th at 1184 (internal quotation marks omitted). Accordingly, this Court should affirm the district court's factual conclusion on this point, too.

### b.    This Conclusion did not Affect the Sentence.

Alternatively, this Court should affirm the procedural reasonableness of White's sentence regardless because the district court indicated that its choice of sentence did not depend on the 2019 shooting. Thus, this Court may affirm the procedural

reasonableness of the sentence without considering the sufficiency of the evidence on this point.

Both the Supreme Court and this Court have indicated that the fact at issue should make a difference to amount to a reversible procedural error. The Supreme Court in *Gall* described the "select[ion of] a sentence based on clearly erroneous facts" as a procedural error. 552 U.S. at 51. Likewise, in *Owens*, this Court indicated that a district court abuses its discretion "if the factual findings it uses in a sentencing enhancement are clearly erroneous." 96 F.4th at 1320. In each decision, the Supreme Court and then this Court framed the issue in terms of an impact on the sentence itself. The district court must rely on the factor to commit a serious procedural error.

Typically, this Court gives credit to a district court's statements on those factors that shaped—and, conversely, those facts that did not shape—a defendant's sentence. *See United States v. Curtin*, 78 F.4th 1299, 1313 (11th Cir. 2023) (noting that a district court "did go on at some length" on a potentially improper topic but also "expressly disclaimed any reliance" on the matter as this Court examined substantive reasonableness). The *Curtin* Court addressed potentially problematic comments by a district court in an assessment of substantive reasonableness and ultimately deemed the comments harmless because other factors supported the sentence. *Id.* at 1313–14. Although the Court addressed substantive reasonableness on that occasion, its deference to a district court's remarks should apply with similar force to procedural

31

reasonableness. For example, this Court routinely declines to address a contested procedural matter if the district court made it clear that the decision did not affect the sentence so long as the ultimate sentence is substantively reasonable. *United States v. Keene*, 470 F.3d 1347, 1348–49 (11th Cir. 2006).

Before the district court addressed the 2019 shooting and 2022 robbery at all, it noted that White's conduct warranted an upward deviation from the Guidelines based on his actions during the firearm offense along with his prior violent convictions. After the district court explained its findings as to those two additional criminal events, the district court reiterated that White should receive a sentence above his Guidelines range even if it did not consider the 2019 shooting. [Doc. 79, 39]. The district court noted that White "more than earned" the maximum sentence of ten years but imposed a sentence of 96 months to account for White's guilty plea. [*Id.*]. As noted below in the substantive discussion, White's serious criminal history certainly justified an upward variance from his Guidelines range. Given those aggravating factors and the district court's admonition about the 2019 assaults, this Court should find that the district court did not base its sentence on that event. *See Curtin*, 78 F.4th at 1313–14 (finding that any improper commentary was harmless as part of a substantive reasonableness analysis). Thus, this Court should affirm the procedural reasonableness of White's sentence.

## B.    White's Violent Recidivism Warranted a 96-Month Sentence.

White's sentence also is substantively reasonable because his penchant for violent behavior warranted a 96-month sentence.  Thus, this Court should affirm White's sentence.

If a sentence is procedurally reasonable, the next step is to address whether the sentence also is substantively reasonable.  *Gall*, 552 U.S. at 51.  The substantive reasonableness inquiry typically turns on the district court's assessment of the sentencing factors that Congress has set out.  18 U.S.C. § 3553(a) (identifying criteria for district courts to consider at sentencing).  For sentences outside the advisory Guidelines range, the Supreme Court directed in *Gall* that this Court should "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."  552 U.S. at 51.  A district court abuses its discretion if it ignores a factor that should have received great weight, gives significant weight to an inappropriate factor, or otherwise clearly errs in its judgment.  *Irey*, 612 F.3d at 1189.  Substantive mistakes rarely occur "given the nature of the enterprise and the familiarity of district court judges with it."  *United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023).

Although a district court should consider all the § 3553(a) factors, it does not have to weigh those criteria equally.  *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009).  Recidivism particularly is important.  This Court has approved of "large

upward deviations based solely on an offender's extensive criminal history." *United States v. Osorio-Moreno*, 814 F.3d 1282, 1288 (11th Cir. 2016). In addition to its frequency, a district court reasonably should consider severity because "[v]iolent offenders are often good candidates for upward variances." *United States v. Riley*, 995 F.3d 1272, 1280 (11th Cir. 2021). Similarly, the Guidelines calculations of criminal history phase out criminal convictions over time. U.S.S.G. § 4A1.2(e). This approach makes sense for offenders who retreat from criminal activity but may warrant a deviation when a defendant continues to reoffend. *See Osorio-Moreno*, 814 F.3d at 1287–88 (noting numerous convictions that did not result in criminal history points).

As this Court proceeds to the substantive reasonableness of the sentence, it may note at the threshold that the district court used language that could be construed as either a variance or a departure. Although district courts often use the terms interchangeably, variances and departures are distinct types of deviations from a Guidelines range in sentencing law. *United States v. Hall*, 965 F.3d 1281, 1295–96 (11th Cir. 2020) (distinguishing variances and departures). As the district court sentenced White, it referred to the sentence as a departure but used reasoning that fits more naturally as a variance. *See id.* at 1296 (explaining that this Court looks "to the court's reasoning and what it said about that reasoning" to decide whether a district court imposed a departure or variance). The district court concluded that White's criminal history category did not adequately reflect his criminal past and cited numerous

sentencing factors in § 3553(a) to support its decision.  [Doc. 79, 40].  For his part, White noted the ambiguity but did not base any argument on it.  [11th Cir. Doc. 20, 20 n.3].  Thus, this Court may leave that issue to the side.

White's sentence is substantively reasonable even if this Court sets the disputed factual findings aside as well.  He is a violent recidivist.  White's PSI noted two prior convictions for robbery (in 1997 and 2015) as well as a 2006 conviction for assault.  He did not contest any of these convictions at his sentencing hearing.  Notably, White received no criminal history points for the 1997 robbery conviction even though he returned to violent activity in the future.  *See Osorio-Moreno*, 814 F.3d at 1287–88 (considering that convictions received no criminal history points).  Along the way, White also committed a series of worthless instrument offenses, some for which he also received no criminal history points.  Put simply, White's criminal record stands out for both its frequency as well as its severity.  The district court could vary upward based on the severity and frequency of White's scored convictions and to account for the full extent of White's criminal conduct.

Moreover, White violated § 922(g)(1) in a particularly troubling fashion.  Officers apprehended White in response to a call about a shooting.  Evidence revealed that White fired randomly at a building in the time before officers caught him.  White did not challenge that determination in this appeal.  This Court has recognized that a history of violence is of acute significance when a defendant possesses a firearm unlawfully.

35

*See Riley*, 995 F.3d at 1280 (noting high rates of recidivism among firearm offenders and indications that violent offenders also recidivate at higher rates). When the district court combined White's violent acts before his apprehension with his violent convictions, the district court reasonably weighed the need to protect the public and deter White from further criminal conduct. 18 U.S.C. §§ 3553(a)(2)(B), 3553(a)(2)(C).

The district court also selected a sentence below the statutory maximum sentence for White's offense. It did so to account for White's decision to admit to his conduct and plead guilty to the offense. This Court treats a sentence—including a sentence above the Guidelines range—that falls well below a statutory maximum as an indicator of reasonableness. *Riley*, 995 F.3d at 1278. This factor supports the reasonableness of the sentence, too.

White points out that the Guidelines accounted for the 2006 assault conviction and 2015 robbery convictions in his PSI. [11th Cir. Doc. 20, 27]. A district court may vary upward, however, even for "conduct that was already considered in calculating" the advisory range in the Guidelines. *United States v. Taylor*, 997 F.3d 1348, 1355 (11th Cir. 2021). Although these convictions received criminal history points, the district court remained free to consider the violent nature of these convictions and to deviate above the Guidelines range because White repeatedly reoffended in a violent fashion. In addition, White received no criminal history points for the 1997 robbery conviction. That offense was part of White's criminal story, too. *See Osorio-Moreno*, 814 F.3d at

1287–88 (noting convictions that did not receive criminal history points).

Finally, White did not develop any argument that his sentence is substantively unreasonable if the district court properly found that White committed the 2019 assaults and 2022 robbery.  He merely contends that the United States did not offer adequate proof of those offenses.  [11th Cir. Doc. 20, 28].  As set out in the procedural arguments above, the United States presented ample evidence on these crimes.  Thus, White's additional criminal conduct provides strong reinforcement for the district court's upward variance.  *See United States v. Overstreet*, 713 F.3d 627, 636–40 (11th Cir. 2013) (affirming a sentence above a defendant's Guidelines range after the district court found by a preponderance of the evidence that the defendant committed a murder).

Hence, the district court selected a substantively reasonable sentence in White's case.  This Court should affirm White's sentence.

## **CONCLUSION**

White's sentence is reasonable both procedurally and substantively.  This Court should affirm White's sentence.

Respectfully submitted,

Sean P. Costello
United States Attorney

 */s/ Scott A. Gray*
Scott A. Gray
Assistant United States Attorney
Attorney for Appellee

37

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B)(i). This brief contains 9,049 words.

 /s/ Scott A. Gray
Scott A. Gray
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2024, a true and correct copy of the foregoing pleading has been served by placing same in the United States mail, postage prepaid and properly addressed to: Kristen Gartman Rogers, Federal Defenders Organization, Inc., 11 North Water Street, Suite 11290, Mobile, Alabama 36602.

 /s/ Scott A. Gray
Scott A. Gray
Assistant United States Attorney